[L. A. No. 17511. In Bank. Feb. 11, 1942.]

THE METROPOLITAN WATER DISTRICT OF SOUTH-
ERN CALIFORNIA, Appellant, v. E. BENNETT
ADAMS et al., Respondents.

THE METROPOLITAN WATER DISTRICT OF SOUTH-
ERN CALIFORNIA, Appellant, v. LAWRENCE
HOLMES et al., Respondents.

James H. Howard, Charles C. Cooper, Jr., Arthur A. Weber, Donald M. Keith, Hill, Morgan & Bledsoe and Vincent Morgan for Appellant.

T. P. Wittschen, J. H. O'Connor, County Counsel (Los Angeles) and Roy W. Dowds, Assistant County Counsel, as Amici Curiae, on behalf of Appellant.

John W. Preston, Miguel Estudillo, Oliver O. Clark, U. S. Webb and C. L. McFarland for Respondents.

SHENK, J.—This is a motion to set aside an order granting a petition for a rehearing in the above entitled cause and to direct the issuance of a remittitur forthwith.

The proceeding is one in eminent domain. A judgment in condemnation was entered by the Superior Court in Riverside County. On appeal by the plaintiff district the judgment was reversed by the District Court of Appeal. (99 Pac. (2d) 659.) A petition by the defendants to have the cause heard in this court was granted and it was thereupon transferred to this court for hearing and determination. The ap-

peal was first argued at Los Angeles on June 6, 1940. The late Chief Justice Waste and Justice Houser were absent from the session, and Presiding Justice John M. York of the District Court of Appeal, Second District, Division One, and Justice Homer R. Spence of the District Court of Appeal, First District, Division Two, as justices *pro tempore,* sat with the remaining justices under assignment by the chairman of the Judicial Council. After oral argument the cause was submitted for decision. The submission was vacated on December 2, 1940, and the cause was again set down for argument, which was held in Los Angeles on April 8, 1941. At that session there were present Chief Justice Gibson, Justices Shenk, Curtis, Edmonds, Carter, Traynor, and the late Presiding Justice John F. Pullen of the District Court of Appeal, Third District, sitting *pro tempore* under assignment by the chairman of the Judicial Council. Following oral argument the cause was again submitted. On August 4, 1941, a judgment of affirmance was filed, upon an opinion written by Justice Carter and concurred in by the Chief Justice, and Justices Traynor and Pullen. Justices Shenk, Curtis and Edmonds dissented. On August 22, 1941, a petition for a rehearing was filed by the plaintiff district. In their answer to the petition for a rehearing the defendants raised the point and vigorously contended that "Justice pro tem. Pullen and not Justice Houser must sit in the disposition of the petition for rehearing." Justice Pullen was not present when the petition for a rehearing was considered and acted upon. Justice Houser was present and participated in such consideration. The point was decided adversely to the defendants' contention and on September 3, 1941, an order granting the petition for a rehearing was signed by Justices Shenk, Curtis, Edmonds and Houser, and was filed in the office of the clerk of this court at Los Angeles during the regular session of the court in that city, at which session all of the regular members of the court were in attendance. On October 14, 1941, the defendants filed a notice of the present motion to set aside the order granting the petition for a rehearing and to direct the issuance of a remittitur forthwith. The notice specified that the motion would be made on the ground that the order of September 3d granting the rehearing was irregular and void for the asserted reason that it did not have the assent of four justices of this court who were qualified to give such

assent and that in consequence thereof the judgment of August 4th became final on September 3, 1941.

By an amendment of the defendants' notice of motion, filed on November 4, 1941, the grounds of the motion were enlarged by adding the contention that under the Constitution of the United States, and particularly the fifth and the fourteenth amendments, they were guaranteed the right, after oral argument and decision by this court to have any petition for rehearing determined by the justices of the court who constituted the court at the time of oral argument, submission and decision of the cause, in the absence of any disqualification or incapacity of said justices to act in the matter, and that a denial of the asserted right would deprive them of a property right in said decision contrary to the aforesaid provisions of the federal Constitution. The motion was orally argued before the court in bank on November 7, 1941.

The order of the chairman of the Judicial Council appointing Justice Pullen as a justice *pro tempore* was addressed to him, was dated March 27, 1941, and assigned him "to sit as a justice of the Supreme Court of the State of California, to assist said Court from April 1 to May 15, 1941, and thereafter to act as such until all matters submitted to you therein shall have been disposed of by you."

Briefly, then, it is the contention of the defendants that since Justice Houser was not present at the oral argument on April 8, 1941, he was not authorized to sign the order granting the rehearing and that said order was and is therefore void and of no effect. Put in another way, the contention is that a majority of the justices who constituted the court at the time of oral argument must concur in any valid order granting a rehearing.

Section 2 of article VI of our state Constitution provides among other things: "The Supreme Court shall consist of a Chief Justice and six associate justices. The court may sit in departments and in bank, and shall always be open for the transaction of business . . . The Chief Justice may convene the court in bank at any time, and shall be the presiding justice of the court when so convened. The concurrence of four justices present at the argument shall be necessary to pronounce a judgment in bank . . .; to render a judgment the concurrence of four judges shall be necessary. In the determination of causes, all decisions of the court, in bank or

in department, shall be given in writing, and the grounds of the decision shall be stated.''

■ The foregoing quotation contains the only reference to argument in causes pending before the court. In its application the right to oral argument in matters on the calendar in open sessions of the court has always been accorded and the necessity for the concurrence of four members of the court who were present at the argument in pronouncing judgment in the cause has always been scrupulously adhered to and enforced. This right was accorded the parties in the present case and four members of the court who were present at the argument concurred in the pronouncement of the judgment. When this had been done the requirements of the Constitution were fulfilled. But from the constitutional provision concerning argument it does not follow that the parties are entitled to oral argument in all matters passed upon by the court in bank. When not conducting an open session, the court is convened in executive sessions at least two times each week. At these sessions numerous matters are ruled upon, such as applications for writs, petitions for transfer from the District Courts of Appeal, and petitions for rehearing of our own decisions. These matters are disposed of by order of at least four members of the court, but no oral argument thereon is provided for by the Constitution or otherwise permitted, and no grounds for the rulings are stated in writing, except in very rare cases in the discretion of the court. The petition for a rehearing in the present case was one of those matters. The action thereon was not to ''pronounce a judgment'' as contemplated by the constitutional provision above quoted, but was a ruling on the question whether there should be a re-consideration of a judgment theretofore pronounced to the end that further argument be had, if desired, and a judgment thereafter pronounced in all respects as required by the Constitution. ■ A judgment is defined by the code as ''the final determination of the rights of the parties in an action or proceeding.'' (Sec. 577, Code Civ. Proc.; 14 Cal. Jur. 852.) It is ''the law's last word in a judicial controversy.'' (30 Am. Jur. 821.) Such was the judgment of August 4, 1941, in the present matter, subject, however, to the power of the court to order a rehearing. Such an order is not a judgment. Section 1003 of the Code of Civil Procedure provides: ''Every direction of a court, judge, or justice, made

or entered in writing, and not included in a judgment, is denominated an order."

There is no express provision of the Constitution or in the statutes for a rehearing of a cause in bank. It is, however, an essential ingredient of jurisdiction. This court has inherent power to revise, modify, and correct its judgments so long as they are under its control and may, in the exercise of that power, grant rehearings on applications of the parties or on its own motion. (*In re Jessup,* 81 Cal. 408 [21 Pac. 976, 22 Pac. 742, 1028, 6 L. R. A. 594].) Nor is there any provision of the Constitution or the statutes as to when a judgment in bank shall become final. Section 45 of the Code of Civil Procedure from 1880 (Amendments to the Code of Civil Procedure 1880, p. 24) until its repeal in 1901 (Stats. 1901, p. 118) purported to provide that judgments of the court in bank should become final, "unless within thirty days after such judgment an order be made in writing, signed by five Justices, granting a rehearing." But said section was declared unconstitutional in *In re Jessup, supra,* in 1889. Since December 19, 1928, the rules of court, as promulgated by the Judicial Council, have provided: "Unless otherwise specially ordered, or a rehearing be granted, judgments of the Supreme Court in bank become final at the end of the thirtieth day after the date of pronouncement." (Rule XXX, 213 Cal., p. lvii.)

The justices entitled to act on matters considered at executive sessions are the regular members of the court except such as may be disqualified or unable to act thereon; and if a full complement of the qualified members be not available, then such justice or justices as may be duly assigned to the court, provided that in no event shall there be more than seven justices acting on a particular matter.

But the defendants insist that Justice Houser had no authority to join in ordering a rehearing because of the form of the order assigning Justice Pullen to the court. It will be noted that he was assigned pursuant to the Judicial Council amendment to the Constitution in 1926 (sec. 1a, art. VI) to "assist the court." He was not assigned "to act for a judge who is disqualified or unable to act, or to sit and hold court when a vacancy in the office of judge has occurred."

The order assigning Justice Pullen fixed the time of his

service as "from April 1st to May 15, 1941", and it is true that the order assigned him "thereafter to act as such until all matters submitted" to him "therein shall have been disposed of" by him. But the application for a rehearing had never been submitted to him. The matter of the pronouncement of judgment had been submitted to him and he had acted on the matter so submitted. But the question whether the judgment should be set aside and further consideration be given to the appeal in accordance with the showing made by the plaintiff district in its petition for a rehearing was a question separate from and independent of the question of the prior pronouncement of judgment. The question whether a rehearing should be granted was, as above stated, presented to the court with its regular membership participating, and Justice Houser had the power to act on the matter unless disqualified. No disqualification, constitutional, statutory or otherwise, has been shown. The assignment, always temporary, of a justice of the District Court of Appeal to the Supreme Court, does not and can not deprive a regularly constituted member of the Supreme Court of his constitutional functions, when he is able, ready and willing to act and no disqualification exists.

A situation identical in principle was presented to this court in *Reeve* v. *Colusa Gas & Electric Co.*, 151 Cal. 29 [91 Pac. 802]. There the plaintiff-respondent moved the court to set aside an order granting a rehearing and to issue a remittitur in accordance with the judgment of the court in bank theretofore made. The case had been first decided in Department Two upon an opinion reversing the judgment for the plaintiff, Justices Henshaw, McFarland and Lorigan joining in the decision. The decision in department was vacated and a hearing in bank was ordered. At the time the case came on for hearing in bank Justice Sloss deemed himself disqualified and Justice McFarland was ill and unable to be present. In order to secure a full bench for the consideration of the case, the court, under the authority of section 4 of article VI of the Constitution, as amended in 1904, selected from the justices of the District Court of Appeal of the First District, Justice Cooper to act in the place of Justice Sloss, and Presiding Justice Harrison to act in place of Justice McFarland. The cause was orally argued before the court in bank as thus constituted, after which the judgment was affirmed by a decision in which Justices Shaw, Angellotti, Har-

rison and Chief Justice Beatty concurred, and from which Justices Henshaw, Lorigan and Cooper dissented. The defendant-appellant then filed a petition for a rehearing. At the time this petition came on for determination Justice McFarland had recovered his health and was again able to act, and was present, ready and willing to act on the matter of granting or denying the petition. Justice Harrison was also present, ready and willing to act in the matter and offered to act thereon, if the court so desired. Thereupon it was decided by the justices of the Supreme Court, all of the members being present, that Justice McFarland and not Justice Harrison should participate in the petition for a rehearing, and that, as the disqualification of Justice Sloss was of a continuing nature, Justice Cooper should continue to act in the case. The court as thus constituted then took up the petition for a rehearing and the same was granted by four of the justices, namely, Justices Henshaw, Lorigan and McFarland of the Supreme Court and Justice Cooper of the District Court of Appeal, sitting *pro tempore*. After the expiration of thirty days following the pronouncement of the judgment the plaintiff moved the court to set aside the order upon the ground that Justice McFarland should not have acted in the matter. The motion to vacate was made on the principal ground that the power of Justice Harrison to act in the case continued until the judgment upon that hearing had become final, or until vacated by a valid order granting a rehearing within thirty days; that until that period had elapsed Justice Harrison's power in the case, so long as he continued qualified, ready and willing to act, was exclusive, and hence that the order granting the rehearing was void because it was made by only three justices qualified and competent to act in the matter. It was held in that case that the merits of the motion would not be inquired into for the reason that inasmuch as the court had theretofore decided that Justice McFarland and not Justice Harrison should participate, said ruling had become the law of the case. Attention was directed to the salutary effect of the application of the rule of law of the case for the reason that if the motion to vacate should be granted, no further consideration could be given to the petition for rehearing notwithstanding the fact that if Justice Harrison had participated it could not be said that he would have been averse to granting it. The

Reeve case cannot be distinguished from the matter at bar. There is, however, no necessity for thus strictly applying the doctrine of the law of the case in the present matter, although the propriety of its application is just as apparent if not clearer here than in the Reeve case. There the question of the right of Justice McFarland to participate arose within the thirty day period on the court's own motion, without notice to the parties. Here the question arose on objection of the defendants before the petition for rehearing was granted, and may therefore be said to have been litigated. The two cases are the same on the facts and are parallel in principle. A more extended reference to the Reeve case is found in the case of *Fay* v. *District Court of Appeal,* 200 Cal. 522, 533 [254 Pac. 896].

The defendants criticize the Reeve case, first, on the asserted ground that by the holding therein this court nullified the provisions of section 2 of article VI of the Constitution, which requires the concurrence of four justices present at the argument to pronounce a judgment in bank. The answer is that the defendants, as heretofore pointed out, have misconstrued the nature of the matter before the court in which Justice Houser participated, for in acting thereon the court was not pronouncing judgment. No oral argument is required or permitted on the consideration of a petition for rehearing. The order thereon is not subject to petition for rehearing and no written opinion is required, as in the case of a judgment duly pronounced.

It is then contended by the defendants that the Reeve case should not apply because the law with reference to the assignment of judges has been so changed as to provide that those justices who are present at the oral argument have the exclusive power and right to act on any matter that may arise in the case after the pronouncement of judgment. This is not so, first, because the change in the law does not expressly or impliedly so provide, and secondly, because the essential functions of a justice *pro tempore* selected by the court to act pursuant to the 1904 amendment to section 4 of article VI of the Constitution are not, so far as the present matter is concerned, any different from those of a justice *pro tempore* assigned to the Supreme Court by the chairman of the Judicial Council pursuant to section 1a of article VI of the Constitution, adopted in 1926. It is true that the occasions for

an assignment were enlarged by the later amendment. Theretofore a justice selected by the court itself could act only in the place of a justice of the court who was disqualified or unable to act. Under the 1926 amendment a justice *pro tempore* may also be assigned to assist a court whose calendar is congested and to sit and hold court when a vacancy in the office of judge has occurred. The enlargement of the occasions for the assignment of justices *pro tempore* by the Judicial Council amendment left the essential functions of the judge or justice after he has been duly assigned the same as before that amendment. (*Fay* v. *District Court of Appeal, supra.*)

█ Furthermore, there is no provision of the Constitution which would prevent a justice of the court, either regular or *pro tempore,* who had not heard the argument from participating in the pronouncement of a judgment (1) if four justices who were present at the argument have also participated or (2) if oral argument has been waived by submission without oral argument (see *Philbrook* v. *Newman,* 148 Cal. 172, 178 [82 Pac. 772]), or (3) if the constitutional requirement of concurrence of four justices present at the argument be waived by stipulation of the parties or otherwise. (See *Blanc* v. *Bowman,* 22 Cal. 23, 24; *Luco* v. *De Toro,* 88 Cal. 26 [25 Pac. 983, 11 L. R. A. 543]; *Niles* v. *Edwards,* 95 Cal. 41 [30 Pac. 134].) In 1891 this court said in the Luco case at page 28: "The rule has always been, with respect to petitions for rehearings, that as many justices as are necessary to pronounce the judgment must concur in granting a rehearing, or the petition will be denied." It is significant that the phrase "as many justices," and not, "as many of the justices who were present at the argument," was used. █ It may be said with equal assurance and certainty that the rule has always been that the regular members of the court and such justices *pro tempore* as are duly assigned to the court and are not disqualified, but not more than seven in all, are competent to act on a petition for rehearing whether they were present at the oral argument or not. This rule has not been questioned since the Reeve case, so far as we have been able to ascertain, and the defendants have not cited an instance to the contrary.

█ The position of the defendants therefore reduces itself to this: That whenever a cause is submitted to a

"panel," as they call it, of justices constituting the court at the time a cause is orally argued and submitted, the individual justices who compose that "panel" are the only justices qualified to act thereafter in any matter affecting that cause until a judgment pronounced therein has become final; and that when justices *pro tempore* are a part of that constituent membership they and they only are the persons who may act in any matter thus arising thereafter, to the exclusion of any regular member of the court who may be present, and ready and willing to act in such matter. If this argument should prevail it would lead to the following untenable conclusions: that Justices York and Spence, who were present at the oral argument on June 6, 1940, should have acted to the exclusion of Chief Justice Waste, had he been living, and Justice Houser, when the order of submission was set aside December 2, 1940; that on the re-argument on April 8, 1941, Justices York and Spence should have acted to the exclusion of a regular member of the court and of Justice Pullen, and that they would have to act on the present motion. But, say the defendants, the order setting aside the submission could have been made by the Chief Justice alone. Again the defendants are laboring under a misapprehension. The matter of setting aside the submission of the cause has always been considered as one requiring court action, and the vote of four of the justices constituting the court at the time the order is made as necessary to its effectiveness. This is the uniform practice. It is safe to say that no order setting aside a submission has otherwise heretofore been made. ▮▮▮ The parties, of course, have the constitutional right to a judgment herein by a duly constituted court, but they have no right, constitutional or otherwise, to a decision by any particular judge or group of judges.

The defendants cite, in support of their theory, the opinion of this court appended to the opinion and order of the District Court of Appeal affirming the judgment of conviction in the case of *People* v. *Ruef*, 14 Cal. App. 576, 621 [114 Pac. 48, 54], wherein it was held on a motion to set aside an order granting a hearing in this court, that Justice Henshaw was disqualified from acting on the petition for a hearing because of his absence from the state at the time the order purporting to grant the same was made, and that as only three other members of the court had signed the order

the same was ineffective to transfer the cause to this court. The court stated at page 630: "The moment Justice Henshaw left the State, in view of the authorities already referred to, he became unable to exercise any judicial function as a justice of the supreme court, in this state or out of it, and this disability continued during the whole period of his absence." The ruling in that case was obviously correct but no such situation is here presented.

 There is nothing in the cases in other jurisdictions, relied upon by the defendants, that is controlling. They cite cases following the practice in the United States Supreme Court to the effect that no rehearing will be granted unless a member of the court concurring in the majority opinion desires such reconsideration. That rule is one of judicial policy and works no compulsion on courts of other jurisdictions to adopt it, and involves no fundamental rights. Cases in other states, such as *Cordner* v. *Cordner*, 91 Utah 474 [64 Pac. (2d) 828]; *Woodbury* v. *Dorman*, 15 Minn. (Gil. 274) 341; and *Gas Products* v. *Rankin*, 63 Mont. 372 [207 Pac. 993, 24 A. L. R. 294], also cited by the defendants, likewise reflect policies in state practice with which we are not here concerned, at least to the extent that they should be adopted in preference to a practice in this state under which the courts and litigants have proceeded with apparent general satisfaction.

 No question of the deprivation of any right of the defendants protected by the federal Constitution is properly involved. In granting the rehearing this court, by a majority of its qualified members, was merely exercising its power of control over litigation pending before it and before final determination. No judgment finally determining the rights of the litigants has as yet passed beyond the control of the court. The cause is still pending. The court up to this time has deprived the litigants of nothing. When a judgment has been pronounced and has become final and not until then have any rights of the defendants, constitutional or otherwise, been unduly disturbed. There is no such vested right in a judgment in the party in whose favor it is rendered as to preclude its re-examination and vacation in the ordinary modes provided by law. (*Garrison* v. *City of New York*, 88 U. S. (21 Wall.) 196 [22 L. Ed. 612].) The practice of the state courts in such matters is a matter of state concern

and if reasonable opportunity to be heard be afforded the litigants thereunder no federal constitutional guarantees are violated. (*Freeland* v. *Williams*, 131 U. S. 405, 417 [9 Sup. Ct. 763, 33 L. Ed. 193] ; *King* v. *West Virginia*, 216 U. S. 92, 93, 100 [30 Sup. Ct. 225, 54 L. Ed. 396].)

The motion is denied.

Gibson, C. J., Curtis, J., Edmonds, J., and Traynor, J., concurred.